**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

ANTONIO A. ADAMS, #360-152, #1006918,

     Plaintiff,

   v.         Civil Action No. JKB-19-2204

WEXFORD HEALTH SOURCE, et al.,

     Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS DR. DARRYL HILL AND
DR. MOFIKPARA WRIGHT'S MOTION TO DISMISS OR
ALTERNATIVELY FOR SUMMARY JUDGMENT**

Defendants Dr. Darryl Hill and Dr. Mofikpara Wright (collectively "Corizon Defendants"), by undersigned counsel, hereby submit this Memorandum of Law in support of their Motion to Dismiss or Alternatively for Summary Judgment.[1]

## I. STATEMENT OF FACTS

**A. Plaintiff's Allegations**

Antonio Adams ("Plaintiff"), an inmate incarcerated at Jessup Correctional Institution ("JCI"), initiated this action by filing a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 on July 29, 2019. CM/ECF No. 1.

In his Complaint, Plaintiff alleges his medical providers have failed to properly treat his swollen testicles since June 29, 2016. CM/ECF No. 1, P. 2.[2] He contends that he was in pain on February 23, 2019 when he saw Dr. Hill and told Dr. Hill to cut out his testicles. CM/ECF No. 1, P. 4. Plaintiff alleges his testicles were two to three times larger in size and he told Dr. Hill he

---

[1] Undersigned counsel represents Corizon Defendants for allegations arising on or after January 1, 2019.

[2] The page numbers cited refer to the CM/ECF page numbers printed in the upper right-hand corner of the page.

was having difficulty urinating, but Dr. Hill denied pain medications and a scrotal support. *Id.* Plaintiff alleges he saw Dr. Wright on May 13, 2019, and Dr. Wright acknowledged almost three years of painful suffering, but Plaintiff still received no pain or scrotal support. *Id.* According to Plaintiff, he still has not seen a urologist or had any lab work completed. CM/ECF No. 1, PP. 4-5.

**B.      Plaintiff's Medical Care**

Dr. Hill is a medical doctor licensed by the State of Maryland since 1998. Ex. A: Decl. of Dr. Darryl Hill ¶ 2. Since January 1, 2019, Dr. Hill has provided medical care to inmates at JCI for Corizon Health, Inc. ("Corizon") as an independent contractor. *Id.* On January 1, 2019, Corizon became the contractual medical provider for inmates in the Maryland Department of Public Safety and Correctional Services, including at JCI. Ex. A: ¶ 5.

Dr. Hill saw Plaintiff on February 23, 2019 for a chronic care visit to address his hypertension and swollen testicles. Ex. A: ¶ 6; Ex. A-1: Adams MR, PP. 002-003. Plaintiff reported he had a history of hydroceles, that his right testicle had been increasing in size for over a year, and it was now more difficult to urinate. Ex. A-1: P. 002. Plaintiff denied chest pain, shortness of breath, fever, or bleeding but stated he wanted his testicle removed. *Id.* Dr. Hill performed a physical exam and noted Plaintiff had an enlarged right testicle secondary to his hydrocele. *Id.* Plaintiff did not report any pain to his testicle, and Dr. Hill noted the testicle was "nontender." Ex. A: ¶ 6; Ex. A-1: P. 004. Dr. Hill submitted a consultation request for Plaintiff to have a testicular ultrasound to confirm the hydrocele. Ex. A-1: PP. 003-005. Plaintiff did not request another scrotal support during this visit. Ex. A: ¶ 6. Based on previous notes, Plaintiff had been given a scrotal support that was documented as being too small and he was referred for another. *Id.* This is the only time Dr. Hill saw Plaintiff for complaints of testicular swelling. *Id.*

Dr. Hill did not provide Plaintiff any pain medication during this February 23, 2019 visit because Plaintiff did not complain of pain, which is typical with a hydrocele. Ex. A: ¶ 7. A hydrocele is a type of benign scrotal mass or swelling in the scrotum that occurs when fluid collects in the thin sheath surrounding a testicle. Id. A hydrocele can develop due to inflammation or injury within the scrotum, or due to infection, including a sexually transmitted infection. Id. A hydrocele is not usually painful or harmful and may not need any treatment. Id. The principle symptom is a painless swelling of one or both testicles, and there may be discomfort from the heaviness of a swollen scrotum. Id. If there is associated pain it may increase with the size of the inflammation. Id.

On May 13, 2019, Plaintiff saw Dr. Mofikpara Wright for a chronic care visit for his hypertension and scrotal mass. Ex. A: ¶ 8; Ex. A-1: PP. 006-007. Dr. Wright noted Plaintiff's history of morbid obesity and history of a large scrotal mass for more than four years. Ex. A-1: P. 006. Dr. Wright noted that Plaintiff complained of worsening painful scrotal swelling, with an increase in the size of the swelling over the last two to three months. Id. He also noted Plaintiff complained of a weak urinary stream, with hesitancy on urination, but no dysuria, hematuria, fever, or chills. Id. Dr. Wright noted Plaintiff had a large hydrocele on the right side and a moderate hydrocele on the left. Ex. A-1: P. 007. He submitted a consultation request for Plaintiff to see a urologist for further workup and evaluation, and Flomax was started for Plaintiff's urinary retention or enlarged prostate. Ex. A-1: PP. 007-009.

On July 23, 2019, Plaintiff had a consult with urologist Dr. Laurence Scipio at Bon Secours Hospital. Ex. A: ¶ 9; Ex. A-1: PP. 010-011. Dr. Scipio noted that Plaintiff was a 50-year-old male seen for bilateral hydroceles, right side three times greater than the left. Ex. A-1: P. 010. Plaintiff reported the hydroceles had been present for four years, but the painful

swelling had increased over the past three to four months. *Id.* Plaintiff reported he was currently taking tamsulosin (Flomax) and hydrochlorothiazide (HCTZ).[3] *Id.* Dr. Scipio noted Plaintiff was morbidly obese but in no distress. Ex. A-1: P. 011. Upon examination, Plaintiff's scrotum was enlarged but no significant tenderness was noted. *Id.* An ultrasound confirmed the presence of bilateral hydroceles, larger on the right, with no evidence of any solid mass lesion or intrinsic testicular pathology, or vascular compromise. *Id.* Dr. Scipio requested a repeat scrotal ultrasound and authorization for a right hydrocelectomy. *Id.* He planned to follow up with a left hydrocelectomy approximately six to eight weeks after the initial surgery depending on the post-surgical process. *Id.*

On August 9, 2019, Plaintiff saw Dr. Mohammad Saleem for an onsite surgery clinic consult. Ex. A: ¶ 10; Ex. A-1: PP. 012-013. Plaintiff was scheduled for a scrotal ultrasound but refused to go have it completed. Ex. A-1, P. 012. Dr. Saleem planned to follow up in three months in case the ultrasound was completed by that time. *Id.*

On August 12, 2019, NP Motunrayo Adegorusi submitted a consult request for Urology. Ex. A: ¶ 11; Ex. A-1: PP. 014-015. He noted that Dr. Scipio recommended a right hydrocelectomy and requested this procedure. Ex. A-1: P. 014. Adegorusi also submitted a request for another scrotal ultrasound as recommended by Dr. Scipio. Ex. A-1: P. 016-017.

On August 22, 2019, Plaintiff saw Dr. Wright again for a chronic care visit for hypertension and hydroceles. Ex. A: ¶ 12; Ex. A-1: PP. 018-019. Dr. Wright noted Plaintiff had seen Dr. Scipio, who had recommended a right hydrocelectomy and repeat scrotal sonogram. Ex. A-1: P. 018. Dr. Wright also noted Plaintiff complained of scrotal pain and heaviness for more than three months, with no penile discharge, burning sensation on urination, dysuria, fever, or

---

[3] HCTZ is a water pill used to treat fluid retention (edema) and high blood pressure (hypetension). (*See https://www.drugs.com/hctz.html*) (last visited Nov. 7, 2019).

4

chills. *Id.* Plaintiff was in no apparent distress, though lower edema was present.   A-1: P. 019.

Dr. Wright ordered or renewed Flomax and ordered lab work. *Id.*

On August 28, 2019, Plaintiff saw Dr. Scipio and had the right hydrocelectomy surgery.

Ex. A: ¶ 13; Ex. A-1: P. 020. No complications were noted. *Id.*

On August 29, 2019, Plaintiff saw PA Robert Giangrandi for admission into the JRI

infirmary after a right hydrocelectomy. Ex. A: ¶ 14; Ex. A-1: PP. 021-023. Giangrandi noted

Plaintiff tolerated the procedure well but continued to have some bleeding from the operative

site, though the bleeding was controlled and a drain was in place.  Ex. A-1: P. 021.

On August 30, 2019, PA Matthew Carpenter saw Plaintiff during infirmary rounds. Ex.

A: ¶ 15; Ex. A-1: PP. 024-025. Plaintiff reported his hydrocele had significantly decreased in

size since the surgery. Ex. A-1: P. 024. He denied scrotal tenderness, fever, chills, pain with

urination, blood in urine, or difficulty with urination. *Id.* Carpenter noted Plaintiff did not report

any pain. *Id.* Plaintiff was educated regarding no heavy lifting for about six weeks and to

continue antibiotics and pain medications as ordered. *Id.* He was also instructed to leave the

drain in place. *Id.* Carpenter submitted a consult request to General Surgery for Plaintiff to

follow up. Ex. A-1: PP. 026-027.

On September 3, 2019, Plaintiff saw Carpenter again during infirmary rounds. Ex. A:

¶ 16; Ex. A-1: PP. 028-029. Plaintiff reported the drain became dislodged on its own a couple

days ago, although Carpenter noted this account conflicted with nursing/provider reports. Ex.

A-1: P. 028. Plaintiff denied pain, fever, chills, pain with urination, blood in urine, or difficulty

with urination. *Id.* He reported no medical complaints and wanted to return to his cell. *Id.*

Carpenter noted decreasing right scrotal edema, assessed an acute, improving hydrocele post

right hydrocelectomy, and planned to discharge Plaintiff back to JCI to follow up with a provider

within two days. *Id.* Carpenter noted that he had spoken to Dr. Scipio, who reported that instead of onsite clinic follow up with another surgeon, he would like to see Plaintiff in his office within about two weeks. *Id.* Carpenter then submitted a consult request for Plaintiff to follow up with Dr. Scipio. Ex. A-1: PP. 030-031.

On September 6, 2019, Plaintiff saw Dr. Wright for a provider visit. Ex. A: ¶ 17; Ex. A-1: PP. 032-033. Plaintiff complained of minimal drainage from the surgical site and requested gauze. Ex. A-1: P. 032. Dr. Wright ordered to continue Keflex and Tylenol medications and follow up with urology in two weeks. *Id.* Plaintiff received gauze and tape. Ex. A-1: P. 034. Plaintiff will continue to be seen regularly at the chronic care clinic and continues to be seen by urologist Dr. Scipio. Ex. A: ¶ 18.

## II. <u>LEGAL ARGUMENT</u>

### A.   Motions to Dismiss

As to a 12(b)(6) motion to dismiss, a plaintiff fails to state a claim when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). This requirement "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

823904v.1

The Supreme Court has held that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). However, the Fourth Circuit has "not read *Erickson* to undermine *Twombly's* requirement that a pleading contain more than labels and conclusions." *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying *Twombly* standard in dismissing pro se complaint); *accord Atherton v. Dist. of Columbia Off. of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint ... 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'") (quoting *Erickson*, 551 U.S. at 94 and *Iqbal*, 556 U.S. at 679).

**B.    Summary Judgment Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate against a plaintiff who fails to make a showing sufficient to establish the existence of an element essential to his case and on which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Failure to demonstrate a genuine issue for trial will result in summary judgment. *See Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 951 (4th Cir. 1995).

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."

823904v.1

*Anderson*, 477 U.S. at 252. The Court may rely on only facts supported in the record, not simply assertions in the pleadings, to fulfill its "affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). "Unsupported speculation is not sufficient to defeat a summary judgment motion." *Id.* (citing *Ash v. United Parcel Serv.*, 800 F.2d 409, 411-12 (4th Cir. 1986)).

**C.     Deliberate Indifference Claims Under 42 U.S.C. § 1983**

Federal claims by prisoners that they received constitutionally deficient medical care in violation of the Eighth Amendment are governed by the deliberate indifference standard. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* The "deliberate indifference" standard is made up of (1) an objective component requiring that the pain or condition be sufficiently serious; and (2) a subjective component requiring that the offending officials acted with a sufficiently culpable state of mind. *Id.* at 104-06. The objective component is satisfied by a serious medical condition and the subjective component is satisfied by showing deliberate indifference by prison officials. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). "[A] 'serious ... medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citing *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

"[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). It requires that

8

a prison official "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official is not deliberately indifferent if she did not actually draw the inference that the prisoner was exposed to a specific risk of harm. *Id.* at 844; *see also Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Indeed, absent subjective knowledge, a prison official is not liable even "if the risk was obvious and a reasonable prison official would have noticed it." *Farmer*, 511 U.S. at 842.

"[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *accord Johnson*, 145 F.3d at 168. "Nor does a prisoner's disagreement with medical personnel over the course of his treatment make out a cause of action." *Taylor v. Bennett*, 105 F. Supp.2d 483, 487 (E.D. Va. 2000) (citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)).

### D.      Plaintiff Failed to State a Claim Against Defendants

In his Complaint, Plaintiff essentially alleges that Dr. Hill and Dr. Wright did not provide the specific medical care that Plaintiff wanted. CM/ECF No. 1, P. 4. Plaintiff complains that Dr. Hill and Dr. Wright did not order pain medication, a scrotal support, blood tests, or send him to a urologist. CM/ECF No. 1, PP. 4-5. However, the law is clear that a prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. *See Wright*, 766 F.2d at 849; *Taylor*, 105 F. Supp.2d at 487. Further, Plaintiff does not allege that Dr. Hill or Dr. Wright knew that Plaintiff needed pain medication, a scrotal support, blood tests, or a urology visit, but deliberately withheld them. A claim of deliberate indifference requires a subjective element, and Plaintiff has failed to adequately plead one in his Complaint. *See*

9

*Farmer*, 511 U.S. at 837. To the extent Plaintiff alleges Dr. Hill and Dr. Wright were negligent or committed malpractice, he has also failed to state a claim for deliberate indifference. *See Estelle*, 429 U.S. at 106; *Johnson*, 145 F.3d at 168. Accordingly, any claim for deliberate indifference against Dr. Hill and Dr. Wright should be dismissed.

"Medical malpractice claims must first be presented to the Maryland Health Claims Arbitration Board before a complaint may be filed in a court of law." *Miller v. Lehman*, No. JKB-14-0896, 2015 WL 641299, at *3 (D. Md. Feb. 12, 2015) (unpublished) (citing Md. Code Ann., Cts. & Jud. Proc. § 3-2A-04 *et seq.* (2007)). A plaintiff is "required under Maryland law to bring his medical malpractice claim before the Health Claims Arbitration Board as a condition precedent to filing a malpractice or negligence suit." *Id.*; *see also Johnson v. Wexford Health Sources, Inc.*, No. JKB-14-2513, 2015 WL 3441958, at *3 (D. Md. May 26, 2015) (unpublished) ("Should plaintiff wish to seek damages based on medical malpractice, he is required under Maryland law to bring his medical malpractice claim before HCADRO as a condition precedent to filing a malpractice or negligence suit.").

To the extent Plaintiff attempts to raise a claim of medical malpractice or negligence, he failed to comply with the mandatory prerequisites of filing such a claim because there is no evidence he submitted the claims to the Maryland Health Claims Arbitration Board as required. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-2A-04 *et seq.*; *Miller*,  2015 WL 641299 at *3; *Johnson*, 2015 WL 3441958 at *3. Accordingly, any medical malpractice or negligence claim must be dismissed.

## E.    Defendants are Entitled to Summary Judgment

Even to assume, *arguendo*, that Plaintiff stated a claim against Corizon Defendants sufficient to survive a 12(b)(6) motion, they are still entitled to summary judgment. The

declaration of Dr. Darryl Hill, attached hereto as Exhibit A, and a true and correct copy of Plaintiff's relevant medical records, attached to Dr. Hill's Declaration as Exhibit A-1, demonstrate that Plaintiff received constitutionally adequate medical care.[4]

As an initial matter, Corizon Defendants do not dispute that Plaintiff's hydroceles were an objectively serious medical need because they were diagnosed by a physician as mandating treatment, and Plaintiff ultimately had a hydrocelectomy. *See Iko*, 535 F.3d at 241. However, the medical evidence shows that Corizon Defendants were not deliberately indifferent to that need.

Plaintiff's complaints against Corizon Defendants involve only two encounters: a visit with Dr. Hill on February 23, 2019 and a visit with Dr. Wright on May 13, 2019. CM/ECF No. 1, PP. 4-5. The medical treatment Plaintiff received at these visits did not violate the Constitution's prohibition against cruel and unusual punishment.

The medical records show that, during the February 23, 2019 visit, Plaintiff did not report any pain to his testicle, and Dr. Hill noted the testicle was "nontender." Ex. A: ¶ 6; Ex. A-1: P. 004. Dr. Hill did not provide Plaintiff any pain medication during this visit because Plaintiff did not complain of pain, which was not unusual because hydroceles usually present with discomfort or heaviness but not pain. Ex. A: ¶ 7. Plaintiff did not request another scrotal support during this visit. Ex. A: ¶ 6. Based on previous notes, Plaintiff had been given a scrotal support that was documented as being too small and he was referred for another. *Id.* Dr. Hill performed a thorough physical exam and submitted a request for Plaintiff to have a testicular ultrasound for further workup. Ex. A-1: PP. 003-005. There is nothing in the record indicating that Dr. Hill

---

[4] "In determining whether a prisoner has received adequate medical treatment, this Court is entitled to rely on the affidavits of medical personnel and prison medical records kept in the ordinary course of operation." *Bennett v. Reed*, 534 F. Supp. 83, 86 (E.D.N.C. 1981), *aff'd*, 676 F.2d 690 (4th Cir. 1982). When "it appears from the entire record that the prison medical authorities have made a sincere and reasonable effort to handle plaintiff's medical problems, plaintiff's constitutional rights have not been violated pursuant to 42 U.S.C. § 1983." *Id.* at 87.

11

believed Plaintiff needed any additional treatment measures during this encounter or that his treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Goodman v. Runion*, 676 F. App'x 156, 160 (4th Cir. 2017) (unpublished) (quotation omitted).

During the May 13, 2019 visit with Plaintiff, Dr. Wright performed a thorough physical exam, submitted a consultation request for Plaintiff to see a urologist for further workup and evaluation, and started Flomax for Plaintiff's urinary retention or enlarged prostate. Ex. A-1: PP. 007-009. Dr. Wright's thorough and conscientious treatment of Plaintiff's complaints is the antithesis of deliberate indifference. *See Robinson v. W. Md. Health Sys. Corp.*, No. DKC-10-3223, 2011 WL 2713462, at *4 (D. Md. July 8, 2011) (unpublished) (When "it appears from the entire record that the prison medical authorities have made a sincere and reasonable effort to handle plaintiff's medical problems, plaintiff's constitutional rights have not been violated pursuant to 42 U.S.C. § 1983.") (quoting *Bennett*, 534 F. Supp. at 87).

To the extent Plaintiff alleges Dr. Hill and Dr. Wright should have performed additional tests or prescribed different treatment, his disagreement with their treatment plans does not show deliberate indifference. *See Wright*, 766 F.2d at 849; *Taylor*, 105 F. Supp.2d at 487. If Plaintiff is attempting to allege that Dr. Hill and Dr. Wright committed negligence or malpractice, he fails to state a claim because negligence alone does not state a claim under 42 U.S.C. § 1983. *See Estelle*, 429 U.S. at 106; *Johnson*, 145 F.3d at 168. And, as explained above, any medical malpractice or negligence claim must be dismissed because there is no evidence Plaintiff submitted his claims to the Maryland Health Claims Arbitration Board as required. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-2A-04 *et seq.*; *Miller*, 2015 WL 641299 at *3; *Johnson*, 2015 WL 3441958 at *3.

Based on the foregoing, Corizon Defendants are entitled to judgment as a matter of law. Based on the undisputed material facts there is no evidence from which a jury could reasonably find for Plaintiff.

### III.  CONCLUSION

Corizon Defendants respectfully request that Plaintiff's suit against them be dismissed for failure to state a claim or, since no dispute of material fact exists, that summary judgment be entered in their favor.

Respectfully submitted, this 8th day of November 2019.

**MARKS, O'NEILL, O'BRIEN, DOHERTY**
**& KELLY, P.C.**

By: */s/ Patricia H. Beall*     
  Patricia H. Beall
  Bar No. 29593
  pbeall@moodklaw.com
  600 Baltimore Avenue, #305
  Towson, Maryland  21204
  (410) 339-6880
  *Attorney for Defendants Dr. Darryl Hill and Dr.*
  *Mofikpara Wright*

13

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 8th day of November 2019, a copy of the foregoing

document was electronically transmitted to this court and mailed first class, postage pre-paid to:

Antonio A. Adams
#360-152
JCI
#1006918
P.O. Box 534
Jessup, MD 20794
*Pro Se Plaintiff*

Gina Marie Smith
Douglas Conrad Meister
Meyers Rodbell and Rosenbaum PA
6801 Kenilworth Ave, Suite 400
Riverdale, MD 20737-1385
Email: gsmith@mrrlaw.net
dmeister@mrrlaw.net
*Attorneys for Wexford Defendants*

*/s/ Patricia H. Beall*
Patricia H. Beall